366 P.2d 837

Norma L. VAN, Plaintiff-Respondent,

v.

UNION PACIFIC RAILROAD COMPANY, a corporation, and W. E. Ayres, A. J. Hirning Paul Jiminez and M. O. Haskett, Defendants-Appellants.

No. 8890.

Supreme Court of Idaho.

Nov. 28, 1961.

Rehearing Denied Jan. 4, 1962.

540

Bryan P. Leverich, Salt Lake City, Utah,
L. H. Anderson, E. C. Phoenix, D. A. By-
bee, Pocatello, for appellants.

Kramer & Walker, Twin Falls, for respondent.

**McFADDEN, Justice.**

Mrs. Van, respondent, instituted this damage action for personal injuries and property loss, sustained in a collision between her automobile and a train. Appellants are the railroad company and members of the operating crew of the train involved. The action was tried before a jury which found for Mrs. Van in the amount of $16,403.81. Judgment was entered on the verdict.

Appellants have appealed from the judgment and from the order denying their motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Appellants specify error in the trial court's denial of various motions, in certain of its rulings on the evidence, in its giving of certain instructions, and in its refusal to give other requested instructions and as to the sequence by which the instructions were given.

The accident occurred shortly after 1:30 A.M., September 12, 1958, at the crossing where appellant company's five spur tracks to a sugar factory cross at right angles the county road running easterly and westerly between Kimberly and Twin Falls. Mrs. Van, alone in her car and driving westerly toward Twin Falls, approached the crossing from the east and struck the ninth car of a slowly moving train on the middle or third track from the east. As a result of the injuries sustained she remembers nothing about the accident. None of the train crew was in a position to see the accident and there were no other witnesses to the accident.

The easterly approach of the highway to the crossing was straight and relatively level for about half a mile. The railroad maintained no crossing sign on the east, but had one on the west of the crossing. A flashing yellow light, installed by the sugar company hung approximately 15 feet above the roadway between the first and second tracks, some 42 feet east of the point of impact.

At the time of the accident the atmosphere was clear and dry; the night was dark with but few stars. A row of trees 130 feet east of the middle track runs north from the edge of the road and tends to obscure an approaching motorist's view to the north of the crossing. Several railroad cars stood on either track two or a crossover between tracks one and two, the nearest end of the cars being about 100 feet north of the road. The engine pulling the train was about 320 feet north of the crossing, and around a slight curve. The fireman, the only member of the five man train crew on the easterly side of the train, could not see the approaching automobile, his vision being blocked by the slight curve and the cars standing on the adjoining track. The engineer was on the west side of the engine, and the rest of the train crew were on the ground along the west side of the train directing switching operations and relaying signals.

The whistle had been blown and the crossing flagged only during the train's first southerly movement over the crossing. The train had crossed the highway, picked up some cars in a switching operation, reversed and was moving slowly north when the accident occurred. The car struck was the ninth car of the train, a coal or gondola car described as a "dirty black". Mrs. Van's car left skid marks on the highway over the last 100 feet before the impact, the last 60 feet being heavy skid marks. She was not under the influence of intoxicating liquor, although she admitted to having had two drinks.

The principal disagreement between the parties on this appeal is that the trial court's rulings and instructions were erroneous in submitting to the jury the question as to whether the particular crossing was "extra-hazardous" or not. Appellants contend that as a matter of law the crossing was not extra-hazardous and the trial court should have so ruled, and not submitted the question to the jury. Respondent, on the other hand contends that such a question is one of fact for decision by the jury. Appellants urge that as a matter of law there was no negligence on their part and that Mrs. Van was contributorily negligent, or phrased differently, the record is insufficient to sustain the verdict.

■ In considering appellants' contentions attacking the sufficiency of the evidence to support the verdict, it is not within the province of this court to set aside a verdict unless it can be said that there is no conflict in the inferences, probabilities and conclusions to be derived from the evidence as to the negligence of the appellants, or as to the contributory negligence of Mrs. Van. Dunclick Inc. v. Utah-Idaho Concrete Pipe Co., 77 Idaho 499, 505, 295 P.2d 700; Cogswell v. C. C. Anderson Stores Co., 68 Idaho 205, 192 P.2d 383. Where different minds might draw different

inferences or conclusions from the facts, whether controverted or not, the issue is one for the jury alone. Fenton v. King Hill Irr. Dist., 67 Idaho 456, 186 P.2d 477; Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404; Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063.

This court has reiterated time and again the principle that the questions of the negligence of the defendant, or of the contributory negligence of the plaintiff are generally for the jury and not for the court. Bates v. Siebrand Bros. Circus & Carnival, 71 Idaho 318, 231 P.2d 747; Stowers v. Union Pacific Railroad Company, 72 Idaho 87, 237 P.2d 1041; Ralph v. Union Pacific Railroad Company, 82 Idaho 240, 351 P.2d 464. Mr. Justice Cooley gives as the principal reason for leaving such matters to the jury:

"But in a very large proportion of the cases in which negligence is counted upon, the facts are of that ambiguous quality, or the proper conclusion so doubtful, that different minds would be unable to agree concerning the existence of fault, or the responsibility for it. The question will often be, does the defendant appear to have exercised the degree of care which a reasonable man would be expected to exercise under like circumstances? To such a question a man of exceeding cautious temperament might respond that he did not; another more sanguine and bold might say he did; and by the side of one or the other of these would the rest of the community range themselves, each person largely affected by temperament and perhaps by his own experience, but firmly maintaining that rule to be a proper one which now, on a retrospective examination of the facts, seems to him to be such.

"If the judge, in such a case, were to pass upon negligence as a question of law, he must, in doing so, be endeavoring to enforce a rule of a variable nature, which must take its final coloring from the experience, training, and temperament of the judge himself; a rule which his predecessor might not have accepted, and which his successor may reject, and upon which a court of review may reverse his action, not because the facts are differently regarded, but because judges are men and men are different. * *" 3 Cooley, Torts, 4th Ed. § 481, p. 389.

The Supreme Court of California in the case of Peri v. Los Angeles Junction Ry. (1943), 22 Cal.2d 111, 137 P.2d 441, 446, made an observation that seems applicable in considering crossing cases generally. The court stated: "Too frequently appellate courts have ignored those fundamental principles[1] when dealing with railroad

---

1. The Supreme Court of California in this case was referring to its previous statements as follows: "Generally speaking the duty to exercise reasonable or ordi-

crossing accidents, and have arbitrarily substituted their conclusions of law as to the care a man of ordinary prudence would exercise under the circumstances presented to the trier of facts."

This court, in Fleenor v. Oregon Short Line R. R. Co., 16 Idaho 781, 102 P. 897, 903, recognized the rule that a duty is imposed not only on the traveler crossing the track of a public highway, but also on the railroad. Both the railroad company and the traveler have equal and like rights and like responsibilities. While the Fleenor case was one involving a pedestrian hit by a moving train, somewhat different from the facts presented here, yet the rules and principles applicable are the same. The court recognized that the railroad company was under no statutory obligation to maintain gates or a flagman, but that under some and perhaps ordinary circumstances failure to do so would constitute negligence at common law. Justice Ailshie in this opinion stated:

"The question as to whether the railroad company was guilty of negligence in not maintaining gates at this crossing or keeping a flagman there was properly a question of fact to go to the jury, under all circumstances of the case, and the necessities and requirements of the peculiar use of this crossing, and the extent of that use by the public".

Appellants contend that Rowe v. Northern Pac. Ry. Co., 52 Idaho 649, 17 P.2d 352, and Smith v. Sharp, 82 Idaho 420, 354 P.2d 172, are decisive in their favor on this appeal, urging that the negligence of appellants, if any, merely constituted a condition, and the act of Mrs. Van in driving into the side of the train was negligence as a matter of law. With this contention we cannot agree.

The basis of the court's decision in the Rowe case is very difficult to determine. There, the plaintiff, a passenger in a car driven by a third person, was injured when the car crashed into the side of a train occupying a crossing in the City of Moscow. The facts indicate that the negligence charged against the railroad company was failure to comply with a city ordinance requiring an adequate light to be maintained on both sides of the crossing. The facts show that incandescent lights *were* maintained. The court did not discuss whether or not the company was guilty of

nary care is imposed upon the operator of a railroad at public highway crossings with respect to persons traveling upon the highway and over the crossing, both as to the manner of operating the train and the maintenance of the crossing. The standard of care is that

of the man of ordinary prudence under the circumstances (citing cases).

"The question of the negligence of the railroad operator is ordinarily one of fact in crossing cases as it is in other negligence cases. (Citing cases.)"

negligence at all, nor did it question whether or not there was compliance with the city ordinance. It merely held, without discussing the standard of care required of the plaintiff, or the particulars in which he had failed to meet such standard, that the plaintiff's negligence was the cause of his injuries. Considered only as a determination that reasonable minds could not differ on the question of plaintiff's contributory negligence, this decision is particularly vulnerable to the criticism previously quoted from Justice Cooley.

In the case of Smith v. Sharp, supra, the complaint alleged the defendant City of Pocatello had placed a steel post barrier at the dead end of South Hayes Street. Defendant Sharp, the driver of a car that crashed the barrier, leading to the death of plaintiff's daughter, drove at an excessive speed, at night, without any lights and without keeping any lookout ahead. The question before this court was whether the action of defendant Sharp was an intervening cause of the accident. This court held that the conduct of Sharp, characterized as "extraordinary and unusual", was such conduct that, as a matter of law, the city was not required to foresee under any circumstances; that hence, no claim for relief was stated against the city on the facts pleaded; and that at most, the action of the city merely created a condition, requiring unforeseeable conduct of a third party to cause the injury complained of.

In the instant case we do not have the intervening negligence of any third party, but we do have a determination by the jury that Mrs. Van was not contributorily negligent. We also have instructions by the court requiring the jury to determine whether the employee appellants should have anticipated that a motorist exercising due care and with standard lights would likely be injured by running into the side of the train. The jury made its determination under this instruction in favor of Mrs. Van.

Nor can Ralph v. Union Pacific Railroad Company, 82 Idaho 240, 245, 351 P.2d 464, 469, another crossing accident case, be considered as determinative here. The trial court in that case granted the railroad company's motion for judgment notwithstanding the verdict and the plaintiff appealed. This court stated: "We have assumed, for the purpose of testing the correctness of the ruling of the trial court in granting the motion for judgment notwithstanding the verdict, that respondents may have been negligent in failing to sound a bell or whistle in approaching the crossing. Even so, the contributory negligence of appellant Mrs. Ralph appears so conclusively that, as a matter of law, we are constrained to hold that the trial court committed no error in the premises, and that, therefore, appellants cannot be allowed a recovery." The court observed that this crossing was one on flat terrain, and unob-

structed view, and one could, if using his senses, discern for at least a mile the approach of a train to the crossing. It was further pointed out that I.C. § 49–747, in part provides that when "An approaching railroad train is plainly visible and is in hazardous proximity to such crossing," the driver must stop within 50 but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely." In the instant case we are dealing with an accident occurring at a crossing occupied by a train, and a crossing not "plainly visible" as in the Ralph case.

■ The circumstances surrounding this unfortunate accident are not greatly different from those in many of the cases cited and urged as controlling by the respective parties. Comparing the individual factual situation of each of these cases with the facts here would unreasonably lengthen this opinion, and would add little but confusion. This court cannot in its appellate function dissect these cases and compartmentalize them on a factual basis. This court's function is to deal with the law. It is sufficient here to point out that reasonable men could differ as to an interpretation of the facts here, and it was reasonable for the jury to find from the facts and circumstances involved here that an ordinarily prudent person would reasonably have foreseen an accident between the train and a driver exercising ordinary prudent care. If a rea-

sonably prudent person would have foreseen such accident, the duty to prevent such occurrence arose, and the question of appellant's negligence was properly submitted to the jury. Fleenor v. Oregon Short Line R. R. Co., 16 Idaho 781, 102 P. 897.

Appellants contend that no negligence has been shown on their part, as the presence of the train itself was notice of the hazard, and that travelers must exercise such degree of care as the hazard present requires, and that presence of the train, being notice to travelers, in effect absolved them from further obligation of notice. The applicability of such doctrine, however, depends on determination of a question of fact or inference from the facts presented, as to whether the train itself was visible. If the train was not visible, the operator of a vehicle could not become aware of the incipient danger of the blocked crossing until it becomes too late for him to protect himself. Negligence under such situation arises if it should have been reasonably anticipated injury likely would occur to one exercising due care in his driving under all the facts and circumstances present.

The court cannot say the trial court erred in refusing to rule that this crossing was not extra-hazardous, leaving that question for the jury. Appellants urge that, as a matter of law, this crossing was not extra-hazardous, and that hence they were under no obligation to give travelers any

548

warning other than the presence of the train itself on the crossing. This principle was discussed in the case of Grand Trunk R. Co. v. Ives, 144 U.S. 408, 12 S. Ct. 679, 684, 36 L.Ed. 485. In the Grand Trunk case the jury had been instructed that they could consider all the facts and circumstances surrounding the particular crossing in determining whether the railroad company was negligent in not having a flagman or other warning at the crossing. The Supreme Court of the United States stated:

"* * * The general rule is well stated in [Central Pass.] Railway Co. v. Kuhn, 86 Ky. 578, 589, 6 S.W.Rep. 441, as follows: 'The doctrine with reference to injuries to those crossing the track of a railway where the right to cross exists is that the company must use such reasonable care and precaution as ordinary prudence would indicate. This vigilance and care must be greater at crossings in a populous town or city than at ordinary crossings in the country; so what is reasonable care and prudence must depend on the facts of each case."

The court said further:

"The reason for such rulings is found in the principle of the common law that every one must so conduct himself and use his own property as that, under ordinary circumstances, he

will not injure another in any way. As a general rule it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence, although in some cases it has been held that it is a question of law for the court."

Factual questions such as that presented by appellants' contention, become questions of law only in those instances where it can be said that reasonable men could have but one conclusion.

Concerning the claimed negligence of Mrs. Van contributing to her injuries, appellants urge that as a matter of law, she was negligent and hence barred from recovery. They point to the existence of the yellow flashing light as placing her on notice of danger. They also claim error in the court in not instructing the jury that the yellow flashing light specifically marked a railroad crossing.

The court's instruction correctly advised the jury that the existence of a flashing yellow light designates a location requiring motorists to exercise caution in proceeding (I.C. § 49–607) and does not

specifically indicate a railroad crossing. The existence of the caution light was one of the facts and circumstances for consideration by the jury. Appellants' contention in this regard is without merit.

One driving in the nighttime is required only to drive at such a rate of speed that he may be able ordinarily to stop short of an object appearing within the radius of his lights, and he must see an object that an ordinarily prudent driver under like circumstances would have seen. Maier v. Minidoka County Motor Co., 61 Idaho 642, 105 P.2d 1076. Normally the question of whether a driver was traveling at an excessive speed is for the jury to determine. O'Connor v. Black, 80 Idaho 96, 326 P.2d 376; Pittman v. Sather, 68 Idaho 29, 188 P.2d 600. Whether a driver has exercised due care at a crossing in looking is also normally a jury question. Stowers v. Union Pac. Ry. Co., 72 Idaho 87, 237 P.2d 1041; Hobbs v. Union Pac. Ry. Co., 62 Idaho 58, 108 P.2d 841.

It must be kept in mind that appellants were unable to convince the jury that Mrs. Van was negligent, or that her negligence contributed to her injuries. We cannot say, as a matter of law, that under the facts the jury was wrong in this determination. Department of Finance of State v. Union Pac. Ry. Co., 61 Idaho 484, 104 P.2d 1110; Hobbs v. Union Pac. R. Co., supra; Stowers v. Union Pac. R. Co., supra.

■ Error is assigned in the rejection of testimony of witness Hankins on cross-examination. This witness, a deputy sheriff, testified he had examined the scene of the accident and observed that the left skid mark left on the highway by Mrs. Van's car was not as distinct as the right one. Counsel sought to have him state whether the brakes were defective, and the answer was rejected on objection. The basic facts were before the court, and the witness testified he did not know whether the brakes were defective. The answer to the question submitted would have been only conjectural. The witness subsequently testified that the car was not getting its maximum braking effect. No error appears in the rejection of this testimony.

The same witness was asked:

"Q. Now the circumstances here were that there was a railroad train standing across the highway. Was the speed limit still fifty-five miles an hour at this point?"

The objection interposed by Mrs. Van's counsel was correctly sustained. This ruling was not incorrect, as the question sought a conclusion of law, the application of law to a certain state of facts.

■ Appellants seek to predicate error on the general sequence in which the court gave its instructions. Generally the order in which instructions are given is discretionary with the trial court. Only un-

**550**

der unusual circumstances clearly disclosing prejudice will a judgment be reversed because of abuse of such discretion. See Rogers v. Crawford (1952), 220 Ark. 385, 247 S.W.2d 1005; Reid's Branson Instruction to Juries, Third Ed., 1960 replacement § 90 p. 260; 3 Am.Jur.App. § 44, § 117, p. 638. The jury was instructed to consider the instructions as a whole. No error is apparent here.

▆▆▆▆ It is contended the court incorrectly advised the jury concerning the effect of Mrs. Van's loss of memory of the events surrounding the accident. The court instructed the jury that under such circumstances a presumption arises that she was exercising ordinary care, which is in itself evidence; and must prevail unless overcome by satisfactory evidence; (Department of Finance of State v. Union Pac. R. Co., 61 Idaho 484, 104 P.2d 1110; Geist v. Moore, 58 Idaho 149, 70 P.2d 403), that the presumption was disputable, but unless it was "adequately and sufficiently controverted," the jury was bound by the presumption. It is contended that the court failed to define the term "adequately and sufficiently controverted" as used in the instruction. The succeeding instruction, however, while not defining those terms specifically, did fix a test to be applied in determining whether the presumption had been overcome, instructing that the presumption may be overcome by other evidence and that if from all the evidence,

the evidence of the appellants was equally balanced with that of Mrs. Van, together with the presumption, they should find for the appellants. This instruction was more favorable to the appellants than that to which they were entitled. The appellants having plead the affirmative defense of contributory negligence (I.R.C.P. 8(c), had the burden of proof on this issue. Larsen v. Jerome Co-operative Creamery, 76 Idaho 439, 283 P.2d 1096. For them to prevail in this defense they had to prove such defense by a preponderance of the evidence, for if the evidence is in equipoise, the law requires a decision against the party having the burden of proof. Koch v. Elkins, 71 Idaho 50, 225 P.2d 457.

Serious doubt arises as to the propriety of giving an instruction on the presumption of due care in an action such as this where contributory negligence has been plead and relied upon as an affirmative defense. Justice Taylor recognized this doubt (in Koch v. Elkins, 71 Idaho 50, 56, 225 P.2d 457, 461), when he stated:

"It has been said that the rule as to burden of proof casts a greater burden upon the party charging negligence than does the presumption of due care on the part of his opponent. Speck v. Sarver, 120 [20] Cal.2d 585, 128 P.2d 16. If not greater the burden is at least equivalent to that imposed by the presumption. When the evidence or lack of evidence leaves the issue of

negligence or contributory negligence in doubt or in equipoise, the law requires a decision against the party having the burden of proof, just as under like circumstances it requires a decision against him when he is confronted with a presumption of due care in favor of his opponent.° So, under our statute making contributory negligence a matter of defense and casting the burden of proof upon the defendant there is no necessity for reemphasizing the point by instructing as to the presumption, at least in any case where the plaintiff is alive and capable of presenting his side of the case to the jury. Speck v. Sarver, 120 [20] Cal. 2d 585, 128 P.2d 16; MacDonald v. Ogan, 61 Idaho 553, 104 P.2d 1106".

In MacDonald v. Ogan, cited in the foregoing quotation, Justice Ailshie, pointed out that it was erroneous to give an instruction dealing with a presumption that arose against the party on whom the burden already rested, obliging him to introduce some evidence before putting the other party to their proofs. Justice Ailshie in his opinion (which was not unanimous), stated:

"Much has been written by both courts and text-writers dealing with the subject of presumptions (both of law and fact), and in the end it comes to this: that, in certain circumstances, the definite existence of a given fact raises the legal inference that an attendant or associated fact existed at the same time or flowed therefrom. It may cast an added burden of proof on the plaintiff as is, in effect, claimed in this case, or it may shift the burden to the adversary. In the present case the instruction placed the *burden on plaintiff* of proving by facts or circumstances that defendant Ogan, when he discharged the 'gas gun' at plaintiff, then and there '*was not acting as a peace officer but in the performance of his duties* to the Potlatch Forests, Inc.' It is admitted that he was at the time a deputy sheriff. Under this instruction it became the duty of the jury to determine whether the proof (of facts or circumstances) justified the conclusion that he was acting, when he discharged the gun, in the performance of his duties to the company or as a peace officer. After all, the existence of the presumption, under the circumstances of this case, is of no substantial benefit to defendant nor detriment to plaintiff, since the burden of proof already rested on plaintiff. It must also be remembered that this is not a case where either plaintiff or defendant rested his case on a naked presumption and without the submission of proofs." [61 Idaho 553, 104 P.2d 1108.]

See also: Prosser on Torts second edition, 198 § 41, Wigmore, Wigmore Evi-

**552**

dence 3d Ed. 1940 § 2490–1. McBain Presumptions; Are they Evidence, 26 Cal. L.Rev. 519; Falkner Notes on Presumptions, XV Wash.L.Rev. and State Bar Journal, 71.

■ Objection is made to an instruction given the jury that under the law Mrs. Van was presumed not to have been under the influence of intoxicating liquor at the time of the accident. Evidence was before the jury that she had consumed some intoxicating liquors prior to the accident, and the results of blood test taken after the accident were admitted without objection. It was not improper to submit this instruction dealing with the presumptions attending a blood test where such facts were before the jury.

Appellants claim that their theory of the case was not properly presented to the jury and assign error in the court's refusal to give certain of their instructions. Considering all the instructions given by the jury as a whole, (State ex rel. Rich v. Dunclick, Inc., 77 Idaho 45, 286 P.2d 1112; Pacific Northwest Pipeline Corp. v. Waller, 80 Idaho 105, 326 P.2d 388), the court fully and adequately instructed the jury on the appropriate law. The requested instructions either did not correctly state the law, were inapplicable, or were fully covered by the instructions given by the court.

Judgment affirmed. Costs to respondent.

KNUDSON and McQUADE, JJ., concur.

TAYLOR, Chief Justice, with whom SMITH, J., concurs (dissenting).

I find no evidence in the record to sustain the inferential finding of the jury that the crossing was an extra-hazardous one. It was error to submit the question to the jury as to whether the crossing was extra-hazardous, thus allowing the jury to impose on appellant the more onerous duties of care and caution associated with an extra-hazardous crossing.

It was error to instruct the jury on the presumption of due care on the part of respondent. Although she was unable to remember events immediately preceding the collision, and there was no other eyewitness, there is no mystery about how the accident occurred. The presumption is applicable only in cases when the want of eyewitnesses, or equivalent circumstantial evidence, leaves the conduct of the injured party, immediately preceding the accident, in doubt, so that the question as to what such party did or omitted to do for his own safety cannot be resolved without resort to speculation. Here the circumstantial evidence establishes beyond peradventure that plaintiff drove her car up to the crossing at such speed that she was unable to stop in time to avoid the collision, after her lights revealed the presence of the cars on the crossing. The evidence leaves no room for doubt or speculation as to how the accident occurred. The instruction advised the jury that plaintiff was presumed to have been

"obeying the law" and "that she was exercising ordinary care" and that the "presumption is in itself evidence" and "shall prevail and control unless overcome by satisfactory evidence," and unless "adequately and sufficiently controverted," the jury must find that plaintiff "was obeying the law and was exercising ordinary care" and "was not negligent," and that the presumption "is evidence in the case and is sufficient in and of itself to support a verdict or finding that the plaintiff was careful at the time and place of the accident." Such instruction when added to the one placing the burden of proof of contributory negligence on the defendants, could not but create an impression in the minds of the jurors that contributory negligence could not be found upon a mere preponderance of the evidence. The instruction on the burden of proof of contributory negligence was entirely sufficient in this case, without compounding it, and confusing the issue with the presumption of due care.

The record conclusively establishes contributory negligence on the part of the respondent, as a matter of law. The accident occurred in the nighttime and it was dark; the weather was clear and dry; there was no smoke or dust to obscure vision; and a flashing yellow light hung over the tracks about 15 feet above the roadway. This light could be seen by respondent for a distance of at least one-half mile from the crossing and the road through the course of that half mile was straight, level, and without any obstruction to respondent's view of the crossing. Respondent testified that she was familiar with the road; had driven over the crossing at least twice before; that she knew the road crossed the railroad tracks at the sugar factory; she had on previous occasions seen the flashing yellow light and knew that the light was "right at it, where the tracks are." Her car left 105 feet of skid marks, the first 39′ 7″ of which were intermittent, and the remaining 65′ 5″ heavily marked.

Thus, the uncontradicted proof is that the respondent knew she was approaching the railroad crossing marked by the caution light; but, nevertheless, she did not operate her car at such speed or in such manner as to be able to stop within the radius of her lights, which it was her duty to do in view of her knowledge that she was approaching a point of danger.

"* * * Generally it is negligence as a matter of law, or at least strong evidence of negligence, for a motorist to operate his automobile on a highway at such a speed that the automobile cannot be stopped within the distance within which objects can be seen ahead of the automobile. (Citation) This court has placed its approval upon the doctrine that one driving at nighttime must proceed at such rate of speed that he may be able ordinarily to stop short of an object appearing in the radius of his lights." Maier v. Minidoka County Motor Co., 61 Idaho 642, at 650, 105 P.2d 1076, 1079.

**554**

Had plaintiff handled her car as an ordinarily prudent person would have done under the circumstances and with the knowledge she possessed of the danger ahead, there would have been no collision. Ralph v. Union Pac. Railroad Co., 82 Idaho 240, 351 P.2d 464; Stowers v. Union Pac. R. Co., 72 Idaho 87, 237 P.2d 1041; Rowe v. Northern Pac. Ry. Co., 52 Idaho 649, 17 P.2d 352; I.C. §§ 49–701 (a, c), 49–821. See also Yearout v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 82 Idaho 466, 354 P.2d 759; Smith v. Sharp, 82 Idaho 420, 354 P.2d 172; Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178; Whiffin v. Union Pac. R. Co., 60 Idaho 141, 89 P.2d 540; Smith v. Oregon Short Line R. R. Co., 47 Idaho 604, 277 P. 570.